| | | |
|---|---|---|
| Robert S. Westermann (VSB No 43294)<br>Sheila deLa Cruz (VSB No. 65395)<br>Hirschler Fleischer, P.C.<br>The Edgeworth Building<br>2100 Cary Street<br>Richmond, Virginia<br>P.O. Box 500<br>Richmond, VA 23218-0500<br>Phone: (804) 771-9500<br>Facsimile (804) 664-0957<br>Email: rwestermann@hf-law.com<br>         sdelacruz@ hflaw.com<br><br>*Counsel for Debtor, Carter's Grove, LLC* | Debra L. Grassgreen (*pro hac vice*)<br>John W. Lucas (*pro hac vice*)<br>PACHULSKI STANG ZIEHL &<br>JONES, LLP<br>150 California Street, 15th Floor<br>San Francisco, CA 94111-4500<br>Phone: (415) 263-7000<br>Facsimile: (415) 263-7010<br>Email: dgrassgreen@pszjlaw.com<br>         jlucas@pszjlaw.com<br><br><br>*Counsel for Debtor, Carter's Grove, LLC* | Stephen J. Darmody (VSB No. 29105)<br>Foley & Lardner LLP<br>One Biscayne Tower, Suite 1900<br>2 South Biscayne Boulevard<br>Miami, FL 33131-2132<br>Phone: (305) 482-8400<br>Facsimile (305) 482-8600<br>Email: sdarmody@foley.com<br><br><br><br><br>*Special Litigation Counsel for Debtor, Carter's Grove, LLC* |

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Newport News Division

| | |
|---|---|
| In re:<br><br>CARTER'S GROVE, LLC,<br>    Debtor,<br>_____<br><br>CARTER'S GROVE, LLC,<br><br>    Plaintiff,<br>v.<br><br>THE COLONIAL WILLIAMSBURG<br>FOUNDATION,<br><br>    Defendant. | Bankruptcy Case No: 11-51330<br><br>Chapter 11<br><br>Av. Proc. No. 11-05027-SCS |

## **OPPOSITION TO DEFENDANT'S MOTION TO DISMISS COUNTS 5 & 6**

Plaintiff, Carter's Grove, LLC, ("Carter's Grove") by and through its undersigned counsel respectfully submits the following Memorandum in Opposition to the Motion by Defendant The Colonial Williamsburg Foundation ("CWF") to dismiss Counts 5 and 6 of the Complaint under Federal Rule of Civil Procedure ("FRCP") 12(b)(6). The motion should be denied; if it is not denied in its entirety, however, Carter's Grove respectfully requests that it be granted leave to amend its complaint.

WASH_8232527.1

## BACKGROUND

CWF's motion to dismiss Counts 5 and 6 of the Complaint presents a fundamentally inaccurate picture of the Complaint and a misunderstanding of the pleading standard for claims brought pursuant to the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA") §§ 107(a)(2), (4), and 113(g)(2). Ironically, it is CWF's motion to dismiss that "merely parrots" the elements of a Rule 12(b)(6) motion, while contrary to CWF's allegations, the Complaint is pled with specificity that exceeds the requirements of FRCP 8(a)(2) and related case law.

Carter's Grove specifically pleads facts to support each element of its claims to recover response costs under CERCLA pursuant to section 107(a)(2) and (4), 42 U.S.C. § 107(a)(2), (4), and declaratory relief pursuant to section 113(g)(2), 42 U.S.C. § 113(g)(2). Reiterating those facts, CWF owned and operated the approximately 475 acre property, referred to in the Complaint as the "Grounds" or the "Facility," (hereinafter "the Grounds") prior to purchase by plaintiff, Carter's Grove. Pl.'s Compl. ¶ 18-20. During its ownership of the Grounds, CWF dug pits and backfilled trash, asphalt and other debris, in essence using the Grounds as a landfill. *Id.* ¶ 36-41. Upon discovering the sunken areas created by these dump sites, and in accordance with the National Contingency Plan, Carter's Grove conducted a Phase I Remedial Investigation to determine whether a threatened or actual release of hazardous substances had occurred on the Grounds. *Id.* ¶ 42-44.

Through this initial remedial procedure, Carter's Grove discovered the hazardous substance selenium in sufficient concentrations to threaten a release into the groundwater. *Id.* ¶ 44-46. Already aware of other fraudulent acts taken by CWF through the sale of the property, (*see* Pl.'s Compl. Counts 1, 2, 3, & 4), Carter's Grove added Counts 5 and 6 to ensure that CWF

is held responsible for its contamination of the Grounds and requisite remedial measures. *Id.* ¶ 68-83.

Declaratory relief is specifically authorized under CERCLA section 113(g)(2) in order to prevent multiple litigation for cost recovery or contribution under the statute. Appropriately, Carter's Grove's Complaint seeks these companion forms of relief. *Dent v. Beazer Services and Materials, Inc.*, 156 F.3d 523, 531-32 (4th Cir. 1998).

## STANDARD OF REVIEW

Under Supreme Court precedent, "when ruling on a motion to dismiss, a judge must accept as true all of the factual allegations contained in the Complaint." *Erickson v. Pardus*, 551 U.S. 89, 93-94 (2007) (citing *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007)). Moreover, "Federal Rule of Civil Procedure 8(a)(2) requires only a 'short and plain statement of the claim showing that the pleader is entitled to relief.'" *See Francis v. Giacomelli*, 588 F.3d 186, 192 (4th Cir. 2009) (stating that "the legal sufficiency of a Complaint is measured by whether it meets the standards for a pleading stated in Rule 8."). Specific facts are not necessary; the statement need only "give the defendant fair notice of what the claim is and the grounds upon which it rests." *Id.* (quoting *Twombly*, 550 U.S. 544, 555-556 (alteration omitted)). "[A] Complaint that states a plausible claim for relief survives a motion to dismiss." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949-50 (2009) (explaining and applying *Twombly*); *see In E. I. du Pont de Nemours & Co. v. Kolon Indus.*, 637 F.3d 435, 440 (4th Cir. 2011) (reversing district court dismissal because the allegations of the Complaint were plausible under *Twombly*).

In *Templeton v. First Tenn. Bank, N.A.*, 2011 U.S. App. LEXIS 8379, *3-4 (4th Cir. Apr. 22, 2011) the Fourth Circuit recently explained that to survive a motion to dismiss, "the Complaint must 'state a plausible claim for relief' that 'permits the court to infer more than the

mere possibility of misconduct' based upon 'its judicial experience and common sense.'" *Id.* (quoting *Iqbal*, 129 S. Ct. at 1950).

Carter's Grove's Complaint alleges far more that the "mere possibility of misconduct" required. *Id.* Therefore Defendant's Motion to Dismiss Counts 5 and 6 of the Complaint, both based on CERCLA, must be denied. *See also Veolia Es Special Services, Inc., v. Techsol Chemical Co.*, 2007 U.S. Dist. LEXIS 88127, *9-11 (W.D. Va. Nov. 30, 2007) (evaluating plaintiff's CERCLA Complaint and stating: "a universal standard of heightened fact pleading is not required, rather it is a flexible 'plausibility standard,' which obliges a pleader to amplify a claim with some factual allegations in those contexts where such amplification is needed to render the claim *plausible*.") (quoting *Iqbal v. Hasty*, 490 F.3d 143, 157-58 (2d Cir. 2007)) (italics original) (internal quotations omitted).

## ARGUMENT

**I.      Plaintiff has Sufficiently Pled its Claim in Count 5 to Recover Response Costs under CERCLA section 107(a)(2), (4), 42 U.S.C. § 9607(a)(2), (4)**

Count 5 of the Complaint, based on CWF's liability as an owner or operator for the threatened release of hazardous substances under CERCLA section 107(a)(2), (4), 42 U.S.C. § 9607(a)(2), (4)), meets and surpasses the "plausibility standard" set out in *Twombly*. 550 U.S. at 555-63.

As explained in the Complaint:

> CERCLA section 107(a) imposes liability upon any person who at the time of disposal of any hazardous substance owned or operated any facility at which such hazardous substance was disposed of. 42 U.S.C. § 9607(a)(1), (2).

Pl.'s Compl. ¶ 69. In order to satisfy the requirements of *Twombly*, Carter's Grove must plausibly allege (1) that CWF is a "person" within the meaning of CERCLA section 101(21), 42 U.S.C. § 9601(21); (2) that the approximately 475 acre property known as "Carter's Grove" and

4

referred to in the Complaint as the "Grounds" or the "Facility" does in fact constitute a "facility" within the meaning of CERCLA section 101(9), 42 U.S.C. § 9601(9); (3) that a "hazardous substance" within the meaning of CERCLA section 101(14), 42 U.S.C. § 9601(14), was disposed of at the facility; (4) that CWF "owned" and/or "operated" the facility, as defined under CERCLA section 101(20)(a), 42 U.S.C. § 9601(20)(a), at the time a hazardous substance was disposed of at the facility; (5) that "releases" or "threatened releases" as defined in CERCLA section 101(22), 42 U.S.C. § 9601(22), of hazardous substances into the environment have occurred at the facility; (6) that Carter's Grove has incurred and will continue to incur necessary costs of "response" as defined by CERCLA section 101(25), 42 U.S.C. § 9601(25), as a result of the threatened release of hazardous substances at the facility, and consistent with the National Contingency Plan, 40 C.F.R., Part 300, promulgated by the United States under the authority of CERCLA section 105, 42 U.S.C. § 9605.

The Complaint includes factual allegations which, taken as true, more than plausibly support each of the elements of Carter's Grove's claim in Count 5. First, CERCLA section 101(21), 42 U.S.C. § 9601(21) defines a "person" as "an individual, firm, corporation, association, partnership, consortium, joint venture, commercial entity, United States Government, State, municipality, commission, political subdivision of a State, or any interstate body." The Complaint states that CWF "is a non-stock, non-profit Virginia corporation" which clearly falls under the definition of a person for purposes of 42 U.S.C. § 9601(21). Pl.'s Compl. ¶ 6.

Second, under CERCLA section 101(9), 42 U.S.C. § 9601(9) a "facility" is defined in as:

WASH_8232527.1

> (A) any building, structure, installation, equipment, pipe or pipeline (including any pipe into a sewer or publicly owned treatment works), well, pit, pond, lagoon, impoundment, ditch, *landfill*, storage container, motor vehicle, rolling stock, or aircraft, or
> (B) *any site or area where a hazardous substance has been deposited*, stored, disposed of, or placed, or otherwise come to be located; but does not include any consumer product in consumer use or any vessel.

(emphasis added). The Complaint alleges the facts as they were discovered by Carter's Grove, and qualify the Grounds as a "facility" under both subparts (A) and (B), above. In essence, the Complaint alleges that the Grounds were used as a landfill: "areas were sinking because there are 'trash pits' beneath these areas where CWF buried construction debris." Pl.'s Compl. ¶ 37. This qualifies the Grounds as a "facility" under CERCLA section 101(9)(A). This allegation of the Complaint also qualifies the Grounds as a "facility" under CERCLA section 101(9)(B): as it alleges the Grounds to be a "site or area where hazardous substances has been deposited, stored, disposed of, or placed, or otherwise come to be located." *See also* Pl.'s Compl. ¶ 40 (alleging that "asphalt and other debris containing hazardous substances [were] in fact buried prior to the Sale of Carter's Grove, when CWF owned Carter's Grove.").

Third, CERCLA section 101(14), 42 U.S.C. § 9601(14)(B) explains that "hazardous substances" include "any element, compound, mixture, solution, or substance designated pursuant to section 9602 of this title." Pursuant to the authority of section 9602, table 302.4 provides a "List of Hazardous Substances and Reportable Quantities" which includes "Selenium" and "Selenium Compounds." 40 C.F.R. 304.2. The Complaint is very specific in this regard: stating that an "investigation revealed that the facility's soil contained the heavy metal selenium at concentrations of 31.9 and 37.4 mg/kg, *approaching one hundred times the mean natural concentration of selenium* in the region (approximately 0.45 mg/kg)." Pl.'s Compl. ¶ 44.

WASH_8232527.1

Fourth, Carter's Grove clearly alleges that the selenium was disposed of by CWF during its ownership of the property, despite CWF's assertions to the contrary. *See* Def.'s Mot. Dismiss Counts 5 & 6, at 6. The Complaint achieves this by first alleging "CWF buried construction debris," (Pl.'s Compl. ¶ 37), then clarifies that "asphalt and other debris containing hazardous substances [were] in fact buried prior to the Sale of Carter's Grove, *when CWF owned Carter's Grove*," (Pl.'s Compl. ¶ 40 (emphasis added)), that "Plaintiff monitored and conducted an investigative Environmental Site Assessment to determine the potential impacts *from the fill materials, refuse and asphalt pavement piles dumped and buried* at the facility," (Pl.'s Compl. ¶ 42 (emphasis added)), and finally that "[t]he investigation revealed that the facility's soil contained the heavy metal selenium . . ." (Pl.'s Compl. ¶ 44).

Furthermore, CWF does not contest its ownership of the facility,[1] which qualifies it under CERCLA section 101(20)(a), 42 U.S.C. § 9601(20)(a) as an "owner or operator," defined therein as "any person owning or operating [an onshore] facility."

Fifth, CERCLA section 101(22), 42 U.S.C. § 9601(22) defines "releases" or threatened releases" of hazardous substances into the environment to include "leaching, dumping, or disposing [the substance] into the environment." *See also* 40 C.F.R. 302.4, Appx. A (listing CERCLA hazardous substances). Carter's Grove's statement of the facts explains just such an event. After alleging CWF's "dumping" and "disposing" of the debris on the Grounds, Carter's Grove investigated those areas for the presence of hazardous substances. Pl.'s Compl. ¶ 43. The concentration of selenium is compared to the "mean concentration of selenium in the region" in order to show the degree to which the concentration of selenium at the facility exceeds expected levels. Pl.'s Compl. ¶ 41. The Complaint notes, as does CWF in it's Motion to

---

[1] Pl.'s Compl. ¶¶ 18-20; Def.'s Answer ¶¶ 18-20.

Dismiss, that selenium is a naturally occurring element in the earth's crust. Pl.'s Compl. ¶ 45; Def.'s Mot. Dismiss Counts 5 & 6, at 6. This is true for many hazardous substances. *See generally*, 40 C.F.R. 302.4 (including other naturally occurring substances such as: arsenic, mercury, lead, cadmium, and copper, etc.). As alleged in the Complaint, however, selenium was found at Carter's Grove in concentrations "approaching one hundred times" its reportable quantity, and in excess of the threshold concentration at which selenium is stable in soil, above which it will "migrate through the soil resulting in a very high threat of [] selenium being released to the groundwater." Pl.'s Compl. ¶¶ 44-45.

Sixth, and finally, Carter's Grove has incurred and will continue to incur necessary costs of "response" as defined by CERCLA section 101(25), 42 U.S.C. § 9601(25) as a result of the threatened release of hazardous substances at the facility. § 9601(25) (defining "response" to include any "remedial action.") CERCLA section 107(a)(4)(A)–(D) goes on to explicate the recoverable costs from an owner or operator of a facility at the time of a hazardous substance release. 42 U.S.C. § 9607(a)(4)(A)–(D). There, recoverable costs include "costs of removal or remedial action" and "any other necessary costs of response incurred by any other person consistent with the national contingency plan." This standard too, was explicitly included in the Complaint:

> costs incurred and to be incurred by the Plaintiff are and will be consistent with the National Contingency Plan, 40 C.F.R., Part 300, promulgated by the United States under the authority of CERCLA section 105, 42 U.S.C. § 9605 and consistent with the National Contingency Plan, 40 C.F.R., Part 300, promulgated by the United States under the authority of CERCLA section 105, 42 U.S.C. § 9605. CWF is liable to the Plaintiff under CERCLA section 107(a), 42 U.S.C. § 9607(a), for response costs incurred and to be incurred by the Plaintiff in connection with the remediation of each of the facility.

Pl.'s Compl. ¶¶ 77-78. The National Contingency Plan describes the necessity of "remedial investigations" such as the investigation Carter's Grove conducted to discover the release of

selenium, rendering their cost clearly within the purview of 42 U.S.C. § 9067. *See* 40 C.F.R. § 300.5 (defining "remedial investigation"); § 300.120(f)(1) (describing the scope of responsibility beginning before the remedial investigation); § 300.430 (defining the requirements of the remedial investigation in great detail).

The level of detail provided by Carter's Grove in Count 5 of its Complaint, goes far beyond merely parroting the elements of the claim and instead outlines facts specific to the case at hand which, taken as true, justify relief under CERCLA.

## II. Plaintiff has Sufficiently Pled its Claim in Count 6 that CWF is Liable for Response Costs Under CERCLA, 42 U.S.C. § 9613(g)(2).

Count 6 of the Complaint, based on CWF's liability for "response costs" under CERCLA, 42. U.S.C. § 9613(g)(2), also meets and surpasses the "plausibility standard" set out in *Twombly*. 550 U.S. at 555-63.

> CERCLA section 113(g)(2) provides that any person may seek a declaration of liability for response costs as defined under CERCLA sections 101(23)-(25). 42 U.S.C. § 9613(g)(2); 42 U.S.C. §§ 9601(23)-(25).

Pl.'s Compl. ¶ 80. In order to satisfy the requirements of *Twombly*, Carter's Grove must "plausibly" allege (1) the existence of an actual controversy for which future costs are neither remote nor speculative, (2) that the absence of a judicial declaration setting forth the parties' rights, duties, and obligations with respect to such costs, may result in multiple legal actions and (3) that Carter's Grove is entitled to a declaratory judgment pursuant to CERCLA section 113(g)(2). *See Dent*, 156 F.3d at 531-32.

The U.S. Court of Appeals for the Fourth Circuit has held that "an actual controversy exists under the Declaratory judgment Act when a plaintiff seeks declaratory relief in order to avoid the accrual of potential damages for past actions." *Volvo Constr. Equip. N. Am., Inc. v. CLM Equip. Co.*, 386 F.3d 581, 593 (4th Cir. 2004) (citing *NUCOR Corp. v. Aceros*

*Y Maquilas de Occidente*, 28 F.3d 572, 577 (7th Cir. 1994)).  Carter's Grove seeks "judicial interpretation and clarification of its rights" in respect to CWF's liability for the costs of responding to the release of hazardous substances on the Grounds as stated in Count 5, under 42 U.S.C. § 9607(a)(2), (4).  *See Id.* at 593 n.10.

Moreover, in regards to the threat of multiple litigation, the Fourth Circuit has explained:

> [t]he language of § 113(g)(2) is not internally inconsistent on the question of when liability should be determined. While § 113(g)(2) permits actions for "further response costs," such as to contest the amount of response costs, it does not permit a successive determination of liability. If each action required a new liability determination, CERCLA's declaratory judgment provision would be meaningless. Section 113(g)(2) specifically provides for a "declaratory judgment on liability for response costs or damages that will be binding on any subsequent action."

*Dent*, 156 F.3d at 532.  Therefore, to prevent multiple litigation, the Fourth Circuit has affirmed that the "statutory language [is] clear, under § 113(g)(2), 'the entry of declaratory judgment as to liability is mandatory.'"  *Dent*, 156 F.3d at 531 (highlighting the fact that claims under § 9613(g)(2) to recover response costs can be brought without regard to status of site investigation or remediation).

As allowed under section CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2), any request to declare liability for *future* expenses will be somewhat speculative; however, "the fact that future costs are somewhat speculative is no bar to a present declaration of liability." *Id.* at 532 (citations omitted).  Moreover, "[p]ermitting prompt declaratory judgments encourages prompt remedial action." *Id.* (citing *O'Neil v. Picillo*, 682 F. Supp. 706, 730 (D.R.I. 1988), aff'd, 883 F.2d 176 (1st Cir. 1989), cert. denied, 493 U.S. 1071 (1990)).

As stated in the Complaint, CERCLA section 113(g)(2), 42 U.S.C. § 9613(g)(2) allows for the relief Carter's Grove requests.  Pl.'s Compl. ¶ 80.  Carter's Grove specifies that an

10

actual controversy exists in this case due to the costs plaintiff has *already* incurred from its remedial investigation, as required under 40 C.F.R. § 300.430 of the National Contingency Plan. *See* Pl.'s Compl. ¶ 81-83. Ongoing remediation efforts and expenses have been proven necessary by the initial investigation, which revealed the presence of selenium in the facility's soils at near one hundred times the reportable concentration. Pl.'s Compl. ¶ 44. The purpose of CERCLA section 113(g)(2) is to protect against the foreseeable likelihood of multiple litigation where remedial efforts will by their very nature, create future and ongoing costs. *Dent*, 156 F.3d at 532; *see also* Pl.'s Compl. ¶ 82. Carter's Grove's claim, under Count 6 is exactly the kind of claim section 113(g)(2) was intended to address. As these facts have all been laid out in the Complaint, Count 6 has been more than "plausibly pled" and should not be dismissed.

## CONCLUSION

CWF's Motion to Dismiss Counts 5 and 6 should be denied for the reasons stated herein. If for any reason the motion is not denied, however, Carter's Grove should be granted leave to amend its Complaint.

WASH_8232527.1

Dated: September 12, 2011

Respectfully submitted,

HIRSCHLER FLEISCHER, P.C.

By: /s/ Sheila deLa Cruz
    Robert S. Westermann (VSB No 43294)
    Sheila deLa Cruz (VSB No. 65395)
    The Edgeworth Building
    2100 Cary Street
    Richmond, Virginia
    P.O. Box 500
    Richmond, VA 23218-0500
    Phone: (804) 771-9500
    Facsimile (804) 664-0957
    Email: rwestermann@hf-law.com
           sdelacruz@ hflaw.com

and

FOLEY AND LARDNER, LLP
Stephen J. Darmody (VSB No. 29105)
One Biscayne Tower
2 South Biscayne Boulevard Suite 1900
Miami, FL 33131
Telephone: (305) 482-8400
Facsimile: (305) 482-8600
Email: sdarmody@foley.com

*Attorneys for Carter's Grove, LLC*

WASH_8232527.1

## CERTIFICATE OF SERVICE

I hereby certify that on this 12th day of September, 2011 a true and correct copy of the above and foregoing document was filed with the Clerk of Court using the CM/ECF system, which will then send a notification of such filing (NEF) to all registered users in this case. I further certify that I have sent a copy of the foregoing by First Class Mail to:

Benjamin C. Ackerly, Esq., and
Tara L. Elgie, Esq.
HUNTON & WILLIAMS LLP
Riverfront Plaza, East Tower
951 E. Byrd Street Richmond, VA 23219
Telephone: (804) 788-8200
Facsimile: (804) 788-8218

*Counsel for The Colonial Williamsburg Foundation*

                /s/ Sheila deLa Cruz
                Counsel

WASH_8232527.1